UNITED STATES, Appellee

v

EARL E. FRISCHHOLZ, Captain, U. S. Air Force, Appellant

16 USCMA 150, 36 CMR 306

No. 14,270

March 25, 1966

David N. Gorman, Esquire, argued the cause for Appellant, Accused. With him on the brief were David E. W. Chatfield, Esquire, and Raymond W. Bergan, Esquire.

Colonel Emanuel Lewis argued the cause for Appellee, United States.

QUINN, Chief Judge:

In 1960, this Court denied the accused's petition to review his conviction, by a general court-martial in Japan, of three specifications of wrongdoing, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, and his sentence to dismissal and forfeiture of all pay and allowances. United States v Frischholz, 12 USCMA 727, 30 CMR 417. Thereafter, the sentence was executed and the accused was dismissed from the United States Air Force. Five years later, he applied to the United States District Court for the District of Columbia for relief from his conviction. District Judge Hart denied the application, indicating that the merits should be considered first by this Court. Thereupon, the accused filed the present Petition for Writ in the Nature of Error Coram Nobis.

Reversing its position in the United States District Court, the Government contends that this Court has no power "to entertain and consider" the accused's application because it is outside the scope of jurisdiction conferred upon this Court by Article 67, Code, supra, 10 USC § 867, and prohibited by Article 76, Code, supra, 10 USC § 876. The latter Article provides that "all dismissals ▆▆▆▆▆ ▆ . . . carried into execution under sentences by courts-martial" are final and conclusive upon all courts, subject only to a petition for a new trial, action by the Secretary concerned, and the authority of the President. This provision does not insulate a conviction from subsequent attack in an appropriate forum. At best it provides finality only as to interpretations of military law by this Court. United States v Armbruster, 11 USCMA 596, 29 CMR 412. It has never been held to bar review of a court-martial, when fundamental questions of jurisdiction are involved. See Burns v Wilson, 346 US 137, 97 L ed 1508, 73 S Ct 1045 (1953); Shapiro v United States, 69 F Supp 205 (Ct Cl) (1947); Application of Stapley, 246 F Supp 316 (DC Utah)

(1965). As the Supreme Court of the United States observed in a related case, a finality clause of the kind in question describes the normal "terminal point for proceedings within the court-martial system." Gusik v Schilder, 340 US 128, 132, 95 L ed 146, 71 S Ct 149 (1950).

Whether this Court has jurisdiction to grant relief encompassed within the writ of *coram nobis* has been before us on other occasions. See United States v Buck, 9 USCMA 290, 26 CMR 70; United States v Tavares, 10 USCMA 282, 27 CMR 356. In those cases, we found it unnecessary to explore or define the limits of our jurisdiction, but we have pointed out that we possess powers incidental to, and protective of, those defined in Article 67. In re Taylor, 12 USCMA 427, 430, 31 CMR 13. On that premise, appellate defense counsel maintain this Court comes within the purview of the All Writs Act which confers upon "all courts established by Act of Congress" authority to issue "writs necessary or appropriate in aid of their respective jurisdictions." 28 USC § 1651(a). Despite the broad language of the All Writs Act, the Government would exclude this Court from its provisions on the ground the Act applies only to courts established by Congress under Article III of the Constitution of the United States. This Court, it contends, was not established under Article III.

We have no desire, and there is no need, to assess the precise Constitutional nature of the juris-▆▆▆▆▆ ▆ diction conferred upon this Court. Contrary to the Government's interpretation, Title 28 does not apply exclusively to courts created by Congress in exercise of its Article III power and to the judges thereof. Many provisions in the Title relate to courts, and the judges thereof, which were established by Congress in exercise of powers other than those possessed under Article III. See, for example, sections 373, 414, 457, 1732, 1738, 1739, and 2071. Section 1732, which deals with the ad-

**151**

missibility of evidence of business records, is especially illuminating. In material part it provides as follows: "In any court of the United States and in any court established by Act of Congress, any writing or record . . . made as a . . . record of any act . . . shall be admissible as evidence of such act. . . ." If "any court established by Act of Congress" means the same thing as "any court of the United States," then Congress was absurdly redundant. Common sense and a respect for the seriousness of the legislative task compel the conclusion that the two terms have different meanings. The difference is made crystal clear in section 451. There, Congress defined the term " 'court of the United States' " as a court created by act of Congress, the judges of which are entitled to hold office during good behavior. Manifestly, as used in Title 28, the term "court of the United States" is not synonymous with the term "court established by Act of Congress." The latter is more comprehensive, and includes courts other than those established by Congress under Article III. It is further apparent that when Congress wanted to limit applicability of a particular provision in Title 28 to specific courts, it did so explicitly. In most of the chapters of the Title, Congress used the term "court of the United States" which it specially defined; but when it was convenient to use an undefined and broader term such as "any court," Congress ended the chapter with a provision enumerating the courts covered by the chapter. See Chapter 41, section 610; Chapter 57, section 963. No such delineation was made with respect to the All Writs Act.

As originally approved by the House of Representatives, the bill providing for the establishment of this Court included tenure for the judges corresponding to that of the judges of Article III courts. However, the concept of direct review of courts-martial by a civilian tribunal was a "revolutionary" aspect of the Uniform Code of Military Justice, and the Court itself was regarded as "experimental." House Report No. 491, 81st Congress, 1st Session, page 6; Hearings before Senate Armed Services Committee on S 457 and HR 4080, 81st Congress, 1st Session, page 43. In its wisdom, the Senate determined to substitute for the House approved provision tenure for a term of years. In the conference to resolve various differences between the House approved bill and the Senate bill, the House conferees acceded to the Senate reservations. The change in tenure, however, did not change the fundamental nature of this tribunal. As summarized by counsel to the House Subcommittee that recommended the bill, the intention was to constitute this Court "a specialized Federal court." Hearings before House Armed Services Committee on HR 2498, 81st Congress, 1st Session, page 1280.

The All Writs Act merely makes "explicit the right to exercise powers implied from the creation of such courts." Reviser's Note, Historical and Revision Notes, 28 USC § 1651. See United States v Morgan, 346 US 502, 506, 98 L ed 248, 74 S Ct 247, footnote 6 (1954). The fact that a court is empowered by Congress to act only in a specially defined area of law does not make it any the less a court established by Congress. Glidden Co. v Zdanok, 370 US 530, 561, 8 L ed 2d 671, 82 S Ct 1459 (1962). Part of our responsibility includes the protection and preservation of the Constitutional rights of persons in the armed forces. Burns v Wilson, supra; see also Chief Justice Warren, "The Bill of Rights and the Military," 37 New York University Law Review 182 (1962). We entertain no doubt, therefore, that this Court is a court established by act of Congress within the meaning of the All Writs Act.[1] Consequently, the Government's motion to dismiss the

---

[1] There is an intimation in the Government's argument that because, under Article 67, Uniform Code of Military Justice, 10 USC § 867, this Court is "located for administrative purposes in the Department of Defense," it is not a judicial tribunal. The illogic of the suggestion is best demonstrated by the fact that for more than a century the housekeeping affairs,

accused's petition because this Court lacks jurisdiction to grant relief is denied.

So far as the pleading filed by the accused is concerned, our conclusion as to our jurisdiction under the All Writs Act does not help him. *Coram nobis* is not a substitute for an appeal. It is extraordinary relief predicated upon "exceptional circumstances" not apparent to the court in its original consideration of the case. United States v Tavares, supra, page 284. It may not be used to seek a reevaluation of the evidence or a reconsideration of alleged errors. Lipscomb v United States, 273 F2d 860, 865 (CA8th Cir) (1960), certiorari denied, 364 US 836, 5 L ed 2d 61, 81 S Ct 72 (1960). Yet, in the brief on the merits of the application, the accused acknowledges that the issues which he now seeks to raise were merely not "fully presented" in his original appeal. Each assignment of error could have been raised on the appeal from the conviction, and most, in fact, were included in the petition for grant of review in 1960. Thus, the accused has not established any acceptable

basis for extraordinary relief. Accordingly, as an application for *coram nobis* relief, the petition is denied.

In substance, the accused is really asking for reconsideration of our 1960 decision denying his petition under Article 67(b)(3) of the Uniform Code of Military Justice. Under Rule 49 of the rules of this Court, an application for reconsideration must be filed within five days of receipt of notice of entry of the original order or decision. Rule 49, Rules of Practice and Procedure, United States Court of Military Appeals. For good cause, this Court can grant relief from the time limit imposed by the Rule, but no reasons have been advanced by the accused to excuse his delay. Nevertheless, to insure that the accused's conviction was not a miscarriage of justice, we have examined the record of trial in detail and we are satisfied that the accused was fairly charged, convicted, and tried, without any error prejudicial to a substantial right. We, therefore, deny this application for relief.

Judges FERGUSON and KILDAY concur.

---

and some of the ministerial responsibilities, of the regular Federal courts, including the Supreme Court of the United States, were processed through the Department of Justice. See Chief Judge H. M. Stephens, "The Administrative Affairs of the United States Courts," 38 American Bar Association Journal 555, July 1952; 2 United States Code Congressional and Administrative News Service, page 1253, 81st Congress, 1st Session, 1949. It is also worth noting that the official organization handbook of the Federal Government, United States Government Organizational Manual, lists this Court in the Judicial Branch Section. See also Shaw v United States, 209 F2d 811 (CA DC Cir) (1954).